IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JIMMY DON GRIFFITH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | ) CIV-08-78-M |
| v. | ) |
| | ) |
| RANDALL G. WORKMAN, Warden, | ) |
| | ) |
| Respondent. | ) |

REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging the conviction for Sexual Abuse of a Child entered in the District Court of Oklahoma County, Case No. CF-2005-1367, for which Petitioner is serving a sentence of 35 years of imprisonment. Respondent has responded to the Petition and filed the relevant state court records. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

I. Background

Petitioner was convicted in the District Court of Oklahoma County, Case No. CF-2005-1367, in a jury trial of the felony offense of Sexual Abuse of a Child. Consistent with the jury's sentencing recommendation, Petitioner was sentenced to a 35-year term of

imprisonment.  Petitioner appealed the conviction to the Oklahoma Court of Criminal Appeals ("OCCA").  In his appellate brief, Petitioner asserted four grounds for relief from the conviction, including (1) the trial court erred in sustaining the State's objection to defense counsel's questions concerning motive to fabricate, (2) the trial court erred in allowing cumulative evidence, (3) Petitioner was denied effective assistance of trial counsel, and (4) Petitioner's sentence was excessive. Response, Ex. 1.  The State responded in opposition to these grounds. Response, Ex. 2.  In a summary opinion issued May 22, 2007, the OCCA affirmed Petitioner's conviction and sentence. Response, Ex. 3.

Petitioner now seeks federal habeas relief.  He contends in ground one that the trial court erred during an *in camera* hearing conducted pursuant to Okla. Stat. tit. 12, § 2803.1 in sustaining the State's objection to defense counsel's questions concerning a prosecution witness's motive to fabricate.  In ground two, Petitioner contends that the trial court erred in allowing the admission of cumulative evidence.  In ground three, Petitioner contends that he was denied his Sixth Amendment right to effective assistance of counsel because his trial counsel failed to provide a witness to show improper motive and to impeach the testimony of a prosecution witness, who is the mother of the victim.

Respondent contends that the issues raised by Petitioner in grounds one and two are matters of state law and the state court's rulings on these evidentiary issues did not deny Petitioner a fundamentally fair trial.  With respect to Petitioner's third ground for habeas relief, Respondent asserts that Petitioner has not shown his trial counsel provided constitutionally ineffective assistance of counsel.

II. Standard of Review

Because the claims raised by Petitioner were adjudicated on their merits in state court, the standard for reviewing Petitioner's claims is prescribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). With respect to legal issues raised in the Petition, habeas relief may be awarded only if the appellate court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. Saiz v. Ortiz, 392 F.3d 1166, 1176 (10th Cir. 2004), cert. denied, 545 U.S. 1146 (2005). Federal courts must apply a "level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)). A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Id. at 405-406, 413. The "state court decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions." Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(*per curiam*). "[A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Id. (quoting Early v. Packer, 537 U.S. 3, 8 (2002)(*per curiam*)).

3

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003). With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court precedent] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(*per curiam*)(citations omitted). As to any factual issues raised in the Petition, the court must determine whether the state appellate court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In this regard, AEDPA mandates that factual findings made by a state trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

III. State Court Errors

In grounds one and two of the Petition, Petitioner asserts trial court error with regard to evidentiary rulings made by the trial court in an *in camera* hearing and during trial. State court evidentiary rulings do not warrant habeas relief unless the ruling rendered the "trial so fundamentally unfair as to constitute a denial of federal constitutional rights." Jackson v.

Shanks, 143 F.3d 1313, 1322 (10th Cir.), cert. denied, 525 U.S. 950 (1998).  Accord, Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990)(due process claim related to admission of evidence at state trial will not support habeas relief "absent fundamental unfairness so as to constitute a denial of due process of law").

In ground one, Petitioner asserts, as he did in his direct appeal, that the trial court erred when it sustained an objection during an *in camera* hearing to cross-examination questions by defense counsel directed toward the mother of the victim.  Prior to trial, the prosecution filed a Notice of Intention to Offer Hearsay Statements of the child victim. Original Record, at 49-73.  After *voir dire* at the beginning of Petitioner's trial, the trial court conducted an *in camera* hearing on the admissibility of the hearsay statements of the victim. This *in camera* hearing was conducted pursuant to Okla. Stat. tit. 12, § 2803.1, which directs the trial court to hold an *in camera* hearing to determine whether "the time, content and totality of circumstances surrounding the taking of the [hearsay] statement[s] provide sufficient indicia of reliability so as to render [them] inherently trustworthy." Okla. Stat. tit. 12, § 2803.1.  The statute contemplates the consideration of factors, including "the spontaneity and consistent repetition of the statement[s], the mental state of the declarant, whether the terminology used is unexpected of a child of similar age or of an incapacitated person, and whether a lack of motive to fabricate exists...." Id.  In Petitioner's case, the trial court conducted the *in camera* hearing to consider the admissibility of hearsay statements made by the child victim to her mother, a friend, a police officer with the Bethany Police Department, and to a forensic interviewer.

During cross-examination of the victim's mother, Petitioner's defense counsel asked the victim's mother if she had informed her friend about a "$52,000 check" that the victim's mother and Petitioner "were waiting for the bank to clear...." Trial Transcript ("TR"), vol. II, at 39. The prosecution objected to this questioning, and the trial court advised defense counsel to "refocus your questions since this hearing is simply about the hearsay statement." TR vol. II, at 39. Petitioner's counsel again asked the victim's mother if the victim was "aware that you and [Petitioner] had gone to the bank to deposit a ... checks totalling $62,000?" TR vol. II, at 40. The prosecutor objected again, and the trial court sustained the objection. TR vol. II, at 40. In an offer of proof to the trial court, Petitioner's counsel advised the court that the questioning of the victim's mother was intended to "draw out the fact that there was a motive for [Petitioner] to be eliminated from the household. There was a financial motive." TR vol. II, at 40. When the court questioned whether the motive being discussed by defense counsel was the motive of the child victim, defense counsel stated that the defense "believe[d] the child was coached." TR vol. II, at 40. The trial court advised defense counsel that the purpose of the hearing under Okla. Stat. tit. 12, § 2803.1 was to determine the admissibility of the hearsay statements of the victim and that defense counsel would have the opportunity at trial to inquire concerning "other matters ... that would not be appropriate during this hearing." TR vol. II, at 41. The hearing then resumed.

On direct appeal, Petitioner asserted that this ruling was error because Okla. Stat. tit.12, § 2803.1 expressly directed the trial court to consider "whether a lack of motive to fabricate exists" in determining the admissibility of hearsay statements. Petitioner asserted

6

that a "motive to fabricate existed" where the child's disclosure of abuse to her mother and her mother's friend occurred on the same day that "the sum of $56,204.10 was deposited" into a bank account of the victim's mother, although the deposit was later determined to have been based on counterfeit cashier's checks.

The OCCA rejected Petitioner's claim of trial court error in his appeal. In the OCCA's opinion, the OCCA found that

> the trial court did not abuse its discretion in restricting the focus of an *in camera* hearing, held pursuant to 12 O.S. 2001, § 2803.1, to issues bearing on the credibility of the out-of-court declarant, rather than that of the witness relating the declarant's statement (in this case, the declarant's mother). Moreover, [Petitioner] fails to demonstrate any prejudice whatsoever, as questions bearing on a possible motive to fabricate, on the part of both the declarant/complainant and her mother, were raised throughout the trial itself.

Response, Ex. 3, at 1-2. Petitioner has not shown that the trial court's ruling during the *in camera* hearing restricting cross-examination of the victim's mother concerning the victim's mother's allegedly improper motive to fabricate resulted in a fundamentally unfair trial. The OCCA's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court jurisprudence, and Petitioner has not shown that the OCCA's decision was based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's trial.

In ground two, Petitioner contends that the trial court erred in admitting cumulative evidence. Petitioner re-asserts the same supporting facts that he asserted in his direct appeal. Petitioner refers to the testimony of the victim's mother, the victim's mother's friend, a

7

police officer, and a forensic interviewer both during the *in camera* hearing and during trial with respect to the hearsay statements of the child victim. Petitioner also refers to other evidence admitted at his trial, identified as State's Exhibits 1 and 4-9, including e-mail messages Petitioner had sent to family members, a videotaped interview of the child victim, and drawings.

In Petitioner's direct appeal, Petitioner relied on the state evidence statute, Okla. Stat. tit. 12, § 2403, giving trial courts discretion to weigh the admissibility of evidence in terms of its probative value versus the "danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence or unfair and harmful surprise...." The OCCA rejected this claim of trial court error based on its finding that "the presentation of several adult witnesses to whom the complainant related her initial allegations, a videotaped forensic interview with the complainant about her claims, and anatomical diagrams used in that interview, were not so cumulative to the complainant's own testimony as to have caused unfair prejudice" to Petitioner. Response, Ex. 3, at 2. The court found that the admission of this evidence was consistent with the state's evidence statute "which contemplates that statements admissible thereunder may be somewhat cumulative to the declarant's live testimony," and that the trial court had followed the procedures set forth in the statute for weighing the admissibility of the evidence. Id. Additionally, the OCCA found that the e-mail messages Petitioner had "sent to the complainant's mother and others were admitted without objection by the defense, and in any event cannot be called cumulative repetitions of the complainant's allegations." Id.

Petitioner has not shown that the trial court's evidentiary rulings to admit the testimony of the witnesses resulted in a fundamentally unfair trial. Each of the witnesses whose testimony is challenged provided noncumulative details of the offense. Petitioner's son testified that he had received an e-mail message from Petitioner addressed to Petitioner's children stating that the victim was "stretching the truth" and that the victim's mother was "doing just what she feels she must do to protect her daughter." TR vol. IV, at 44-45. Petitioner further stated in the e-mail message that the victim's allegations "have to do with times that I used either pressure points or massage techniques on her to help her feel better after a fall, et cetera....Please do not pass any information on to anyone without first consulting me...." TR vol. IV, at 46. Defense counsel did not object to the admission of this evidence. TR vol. IV, at 47. This evidence was not cumulative to any other evidence presented at Petitioner's trial, and Petitioner has not shown that its admission denied him a fundamentally fair trial. The OCCA's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court jurisprudence, and Petitioner has not shown that the OCCA's decision was based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's trial. Accordingly, habeas relief concerning these issues should be denied.

IV. <u>Ineffective Assistance of Counsel</u>

In his third and final ground for habeas relief, Petitioner asserts that he was denied his Sixth Amendment right to effective assistance of counsel. Evaluation of the effectiveness of Petitioner's trial counsel's assistance "requires a two-part inquiry. 'In order to prevail, the

defendant must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Williamson v. Ward, 110 F.3d 1508, 1514 (10th Cir. 1997)(quoting Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)). Counsel's performance is evaluated from the attorney's perspective at the time of the assistance, considered in light of all the circumstances prevailing at that time, and indulging a strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984).

Re-urging the same argument made in his direct appeal, Petitioner asserts that his trial counsel did not provide an adequate defense because he did not present "a witness from the IBC Bank in Bethany to show a strong motive for the allegations and to impeach the testimony" of the victim's mother. The trial record reflects that the victim first informed her mother and her mother's friend concerning the abuse on February 4, 2005. Petitioner recites some of the testimony of the victim's mother during cross-examination by Petitioner's defense counsel regarding a "multi-thousand dollar deposit at IBC" Bank, "part of" which was made on February 3, 2005. TR vol. III, at 72-74. Petitioner also recites testimony of the victim's mother on redirect concerning a bank deposit to her account that caused her to go to her bank on February 8, 2005, and advise the bank that Petitioner "had been doing internet business out of my home and I had no idea as to whether or not the funds were legal." TR vol. III, at 76. The victim's mother testified that "that was not the first check that [Petitioner] had received that turned out to be bogus," and that the bank froze the account and "later

discovered that there really was no money." TR vol. III, at 76. Further, the victim's mother testified that she had received an e-mail message from Petitioner which stated, in part, "You should not have stopped the money in the bank." TR vol. III, at 78. The victim's mother also stated that Petitioner had withdrawn $600.00 from the account on the same day that she went to the bank. TR vol. III, at 79.

Petitioner contended in his appeal that evidence his appellate counsel obtained after the trial could have been used to impeach the victim's mother's testimony that she requested the bank freeze the account. Petitioner described this evidence in a narrative form and indicated that it was Petitioner's attorney that requested the bank freeze the money in the victim's mother's account "until the ownership could be determined." Response, Ex. 1, at 17.

In the OCCA's decision, the OCCA concluded that Petitioner had not shown he received ineffective assistance of counsel under Strickland. The OCCA reasoned that "other evidence at trial (including an email sent by [Petitioner] himself) reflects that the complainant's mother had also sought to have the funds frozen. [Petitioner] had every opportunity at trial to suggest some ulterior financial motive to the witness's testimony." Response, Ex. 3, at 3. The OCCA also denied Petitioner's request for an evidentiary hearing concerning the Sixth Amendment issue.

Petitioner has not shown that his counsel provided objectively unreasonable assistance under the circumstances. As the OCCA pointed out, any additional evidence concerning a request by Petitioner to freeze the money in the victim's mother's account would not have impeached her testimony because other evidence presented at the trial, including Petitioner's

own e-mail message to the victim's mother, was consistent with her testimony that she had initiated the bank's action in freezing the account. Petitioner conceded in his appeal that the bank later determined the $56,204.10 deposit made by Petitioner on February 4, 2005, into the victim's mother's account was made using counterfeit cashier checks. This fact certainly was consistent with the victim's mother's testimony that she went to the bank because she was suspicious whether the deposit was legal. Petitioner has not shown how the purported testimony of a bank official would have provided probative evidence of his innocence or would have impeached the victim's mother's testimony. The OCCA's decision is not contrary to, or an unreasonable application of, the governing Strickland standard, nor is it based on an unreasonable determination of the facts in light of the evidence presented at Petitioner's trial. Accordingly, Petitioner is not entitled to habeas relief concerning this claim.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by __May 19th__, 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned

Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this  28th  day of   April  , 2008.

/s/ Gary M. Purcell
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE